1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   GEORGE E. SKOKEN,

8                    Plaintiff,          NO:  12-CV-0141-TOR

9        v.                              ORDER GRANTING DEFENDANT'S
                                         MOTION FOR SUMMARY
10  CAROLYN W. COLVIN, Acting            JUDGMENT
    Commissioner of Social Security[1],

11
                     Defendant.
12

13        BEFORE THE COURT are the parties' cross motions for summary

14  judgment (ECF Nos. 15, 19).  Plaintiff is represented by Maureen J. Rosette.

15  _____

16  [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on

17  February 14, 2013.  Under Rule 25(d) of the Federal Rules of Civil Procedure,

18  Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

19  No further action need be taken to continue this suit by reason of the last sentence

20  of 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

1    Defendant is represented by Franco L. Becia.  The Court has reviewed the

2    administrative record and the parties' completed briefing and is fully informed.

3    For the reasons discussed below, the Court grants Defendant's motion and denies

4    Plaintiff's motion.

5                                JURISDICTION

6         The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g);

7    1383(c)(3).

8                            STANDARD OF REVIEW

9         A district court's review of a final decision of the Commissioner of Social

10   Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is

11   limited: the Commissioner's decision will be disturbed "only if it is not supported

12   by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

13   1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

14   relevant evidence that "a reasonable mind might accept as adequate to support a

15   conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently,

16   substantial evidence equates to "more than a mere scintilla[,] but less than a

17   preponderance."  *Id.* (quotation and citation omitted).  In determining whether this

18   standard has been satisfied, a reviewing court must consider the entire record as a

19   whole rather than searching for supporting evidence in isolation.  *Id.*

20

1    In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the Commissioner.  If the evidence in the record "is

3    susceptible to more than one rational interpretation, [the court] must uphold the

4    ALJ's findings if they are supported by inferences reasonably drawn from the

5    record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

6    court "may not reverse an ALJ's decision on account of an error that is harmless."

7    *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's]

8    ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).

9    The party appealing the ALJ's decision generally bears the burden of establishing

10   that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

11                    SEQUENTIAL EVALUATION PROCESS

12        After a person is found to be entitled to disability benefits, the

13   Commissioner is required to periodically review whether continued entitlement to

14   such benefits is warranted.[2]  The Commissioner has established a multi-step

15

16   [2] While this is not a continuing disability review case, the Commissioner and a

17   majority of courts employ the eight-step sequential analysis described below to

18   determine whether there has been medical improvement in a closed period

19   disability case.  *See Deronde v. Astrue*, 2013 WL 869489, slip op. at 2 (N.D.N.Y.

20   2013) (unpublished) (collecting cases).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

sequential evaluation process for determining whether a person's disability has

ended. 20 C.F.R. §§ 404.1594(f) (Title II), 416.994(b)(5) (Title XVI).  This multi-

step continuing disability review process is similar to the five-step sequential

evaluation process used to evaluate initial claims, with additional attention as to

whether there has been medical improvement.  *Compare* 20 C.F.R. § 404.1520 and

416.920 with 20 C.F.R. § 404.1594(f) and 416.994(b)(5), respectively.  A claimant

is disabled only if his impairment is "of such severity that he is not only unable to

do his previous work[,] but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in

the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Determination of whether a person's eligibility has ended for disability

benefits involves an eight-step process under Title II and a seven-step process

under Title XVI.  20 C.F.R. §§ 404.1594(f)(1)-(8); 20 C.F.R. § 416.994(b)(5)(i)-

(vii).  The Title XVI process is identical to the Title II process, except for

consideration of substantial gainful activity at the beginning of the disability

insurance process and not during the Title XVI process.  These otherwise identical

eight steps are broadly summarized as follows:

The first step addresses whether the claimant is engaging in substantial

gainful activity. 20 C.F.R. § 404.1594(f)(1). If not, step two determines whether

the claimant has an impairment or combination of impairments that meet or equal

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

the severity of listed impairments set forth at 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. §§ 404.1520(d), 404.1594(f)(2), 416.920(d), 416.994(b)(5)(i).

If the impairment does not equal a listed impairment, the third step addresses whether there has been medical improvement in the claimant's condition. 20 C.F.R. § 404.1594(f)(3), 416.994(b)(5)(ii). Medical improvement is "any decrease in the medical severity" of the impairment that was present at the time the individual was disabled or continued to be disabled. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).

If there has been medical improvement, at step four, a determination is made whether such improvement is related to the claimant's ability to perform work— that is, whether there has been an increase in the individual's residual functional capacity. 20 C.F.R. §§ 404.1594(f)(4), 416.994(b)(iii). If the answer to step four is yes, the Commissioner skips to step six and inquires whether all of the claimant's current impairments in combination are severe.

If there has been no medical improvement or medical improvement is not related to the claimant's ability to work, the evaluation proceeds to step five. At step five, consideration is given to whether the case meets any of the special exceptions to medical improvement for determining that disability has ceased. 20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).

At step six, if medical improvement is shown to be related to the claimant's ability to work, a determination will be made to assess whether the claimant's current impairments in combination are severe—that is, whether they impose more than a minimal limitation on his physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v).  If the answer to that inquiry is yes, at step seven the ALJ must determine whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1520(e), 404.1594(f)(7), 416.994(b)(5)(vi), 416.920(e); SSR 82-61, available at 1982 WL 31387.

Finally, at step eight, if the claimant cannot perform past relevant work, a limited burden of production shifts to the Commissioner to prove there is alternative work in the national economy that the claimant can perform given his age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii). If the claimant cannot perform a significant number of other jobs, he remains disabled despite medical improvement; if, however, he can perform a significant number of other jobs, disability ceases. *Id*.

Prior to the final step, the burden to prove disability and continuing entitlement to disability benefits is on the claimant.  20 C.F.R. §§ 404.1594, 416.994; *cf. Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner must consider all evidence without regard to prior findings and there must be substantial evidence that medical improvement has occurred.  42 U.S.C.

§§ 423(f)(1), 1382c(a)(4).  The Commissioner views the evidence in a continuing disability review from a neutral perspective, without any initial inference as to the existence of disability being drawn from a prior finding of disability. 42 U.S.C. §§ 423(f)(1), 1382c(a)(4).

If the analysis proceeds to step eight, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  Cf. *Bowen v. Yuckert*, 482 U.S. at 146 n. 5; and *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (applying the same burden at the initial disability determination).

The Commissioner contends "[t]he 1984 Amendments to the Social Security Act addressing the medical improvement standard specifically reject the concept of presumed continuing disability in termination cases."  ECF No. 19 at 7.  According to the Commissioner, the Ninth Circuit in *Bellamy v. Sect'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985), articulated this presumption of continuing disability shortly after 1984 without taking the amendments into consideration.[3]

---

[3] The Ninth Circuit's most recent citation to *Bellamy,* in *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007), is clearly dicta, again without any analysis of the intervening 1984 amendments whatsoever.

1    It must be noted that *Bellamy* relied upon *Murray v. Heckler*, 722 F.2d 499,

2    500 (9th Cir. 1983) for the presumption of continuing disability proposition.  In

3    turn, *Murray* relied upon *Patti v. Schweiker*, 669 F.2d 582 (9th Cir. 1982) for the

4    presumption.  However, in 1986, the Ninth Circuit acknowledged that the holding

5    in *Patti* was superseded by statute.  *Warren v. Bowen*, 804 F.2d 1120, 1121 (9th

6    Cir. 1986) (see 42 U.S.C. § 1382c(a)(4) ("Any determination made under this

7    paragraph shall be made on the basis of the weight of the evidence and on a neutral

8    basis with regard to the individual's condition, without any initial inference as to

9    the presence or absence of disability being drawn from the fact that the individual

10    has previously been determined to be disabled").

11    Additionally, other circuits have addressed the amendments and found a

12    clear conflict between the presumption and the statutory language. *See Cutlip v.*

13    *Secretary of HHS*, 25 F.3d 284, 286 n. 1 (6th Cir. 1994) (presumption has been

14    eliminated); *see also Rhoten v. Bowen*, 854 F.2d 667, 669 (4th Cir. 1988)

15    (presumption of continuing disability eliminated, terminations now based on

16    substantial evidence of medical improvement).

17    Accordingly, the Court recognizes that controlling Ninth Circuit precedent

18    has acknowledged that the presumption of continuing disability, espoused in *Patti*

19    (and its progeny), no longer applies.

20    ///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

ALJ'S FINDINGS

Plaintiff is a younger individual with a high school education and a history of unskilled work as a window washer.  Tr. 31.  He was involved in an automobile accident in 2005, Tr. 27, and hasn't worked since April 2007.  In July 2007, Plaintiff underwent an anterior cervical discectomy with interbody fusion, hip bone graft, and anterior plating at C5-C6.  Tr. 28.

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on September 25, 2007.  Tr. 134-142.   His applications were denied initially, Tr. 78- 81, and upon reconsideration.  Tr. 85-89.  Plaintiff requested a hearing before an administrative law judge (ALJ) which was held on March 30, 2010.  Tr. 43-73.  The ALJ found Plaintiff disabled from April 1, 2007, the amended alleged onset date, through March 31, 2009.  Tr. 25.  Benefits were awarded for this closed period of disability.  Tr. 37.  The ALJ applied the eight-step continuing disability review process and determined Plaintiff's disability ended on March 31, 2009.  Tr. 32-37.  The Appeals Council denied Plaintiff's request for review, Tr. 1-7, making the ALJ's decision the final decision of the Commissioner.

ISSUES

Plaintiff raises the following issues for review.  First, Plaintiff contends the "substantial weight of the evidence supports his contention that he had not

obtained medical improvement as of April 1, 2009." ECF No. 16 at 13.  Second,

Plaintiff contends that "the ALJ did not properly consider nor reject [Plaintiff's]

testimony regarding his limitations from his pain."  *Id*. at 13-15.  Third, Plaintiff

contends "he had more limitations from a psychological standpoint" than what the

ALJ  determined.  *Id*. at 16.  Plaintiff contends that the ALJ did not properly

consider nor reject an examining psychologist's opinion.  *Id*. at 16-17.  And fourth,

Plaintiff contends that the hypothetical question presented to the vocational expert

did not properly account for his more limited residual functional capacity.  *Id*.

DISCUSSION

**A. Medical Improvement**

Plaintiff argues that "the substantial weight of the evidence supports his

contention that he had not obtained medical improvement as of April 1, 2009."

ECF No. 16 at 10-13.  He cites to a several references in the record dated from

2007 to 2011 in support of his contention, but does not address the evidence the

ALJ relied upon to find that he had indeed improved.  In his reply brief, Plaintiff

primarily reiterates the evidence the ALJ accepted to find him disabled for the

closed period, but again does not address any substantial evidence demonstrating

that he continues to be disabled after April 2009.

As outlined above, disability benefits may be terminated only if substantial

evidence demonstrates there has been medical improvement affecting the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

claimant's ability to work such that the claimant is now able to engage in

substantial gainful activity.  *See* 42 U.S.C. §§ 423(f)(1), 1382c(a)(4).  Medical

improvement is defined as:

> any decrease in the medical severity of your impairment(s) which was
> present at the time of the most recent favorable medical decision that
> you were disabled or continued to be disabled. A determination that
> there has been a decrease in medical severity must be based on
> changes (improvement) in the symptoms, signs and/or laboratory
> findings associated with your impairment(s) (see § 404.1528).

20 CFR § 404.1594(b)(1).  Coincidentally, the two examples of medical

improvement provided in the regulation involve an individual receiving a

successful back fusion operation and another healing after bone fractures sustained

in an automobile accident.  § 404.1594(b)(3) example 1 and 2.

Here the ALJ found that as of December 14, 2007, Dr. Hahn, who performed

the Plaintiff's cervical discectomy and fusion, believed that it would only be a

short amount of time before Plaintiff could resume full activities, including work.

Tr. 30.  Plaintiff was released from Dr. Hahn's care.  The ALJ expressly gave the

Plaintiff the benefit of the doubt, allocated him additional time in which to fully

recover from his injuries and surgery and based on the medical evidence, found

that he had rehabilitated as of April 1, 2009.  *Id*.  The ALJ detailed the progress

Plaintiff was making.  Tr. 33-35.  While Plaintiff had a setback in July 2008 when

he was involved in another automobile accident, by April 2009 he was no longer

receiving physical therapy or cervical epidurals, his condition was quite improved

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1    and he was managing his mild to moderate pain.  Tr. 34.  Substantial evidence in

2    the record supports the ALJ's findings of medical improvement.

3    **B. ALJ's Evaluation of Plaintiff's Credibility**

4          Plaintiff next contends that the ALJ improperly discredited Plaintiff's

5    subjective complaints.  Evaluating the credibility of a claimant's testimony

6    regarding subjective pain requires the ALJ to engage in a two-step analysis.

7    *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ

8    must determine whether the claimant has presented objective medical evidence of

9    an underlying impairment which could reasonably be expected to produce the pain

10   or other symptoms alleged."  *Id.* at 1036 (internal citations and quotation marks

11   omitted).  The claimant is not required to show that her impairment "could

12   reasonably be expected to cause the severity of the symptom she has alleged; she

13   need only show that it could reasonably have caused some degree of the

14   symptom."  *Id.* (quoting *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996)).  If

15   the claimant satisfies the first step and there is no evidence of malingering, the ALJ

16   may only reject the claimant's testimony about the severity of the symptoms by

17   providing "specific, clear and convincing reasons" for the rejection.  *Vasquez v.*

18   *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

19         The ALJ may not reject the claimant's subjective symptom testimony

20   "simply because there is no showing that the impairment can reasonably produce

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

the *degree* of symptom alleged." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*,

80 F.3d at 1282).  Nor may the ALJ discredit the subjective testimony as to the

severity of the symptoms "merely because they are unsupported by objective

medical evidence." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998).  On the

other hand, "the medical evidence is still a relevant factor in determining the

severity" of the claimant's limitations.  *Rollins v. Massanari*, 261 F.3d 853, 856

(9th Cir. 2001).

After considering the evidence of record, the ALJ found that Plaintiff's

medically determinable impairments could have reasonably been expected to

produce the alleged symptoms, but his statements concerning the intensity,

persistence and limiting effects of those symptoms were not entirely credible

beginning April 1, 2009.  Tr. 33.  The Court finds the ALJ stated sufficiently

specific reasons for not fully crediting Plaintiff's statements.  The ALJ noted that

the medical evidence did not support the Plaintiff's allegation that he could not

sustain any type of work at all.  Tr. 33.

The ALJ found that in December 2007, Plaintiff returned to see Dr. Hahn for

a follow up examination.  Tr. 29, 409.  Dr. Hahn noted that the pain in Plaintiff's

arm was completely resolved and that he had some mild chronic neck pain which

was not too bad. Dr. Hahn reported that Plaintiff moved his neck quite well in his

office and she told him he could gradually increase his activities to normal and that

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

he should have a weight lifting restriction of not more than 60-80 pounds on an occasional basis. *Id*. As a result, Dr. Hahn released Plaintiff from her care, Tr. 33, 409, and referred him to his family physician should he need further medication, Tr. 29.

The ALJ also explained that in January 2009, a physical therapy note indicated Plaintiff "really has pretty good range and use of his left shoulder. If we can help him with some of his pain, he should do well. We will see how much he can follow through at home." Tr. 34, 717. The ALJ noted that on March 10, 2009, Plaintiff was discharged from rehabilitation due to a lack of attendance. *Id*. According to a Physical Therapy Discharge Summary prepared on March 10, 2009, Plaintiff's physical therapist noted he was seen for two treatment visits and one initial evaluation with numerous cancellations. Tr. 33, 722. Plaintiff cancelled his physical therapy sessions seven times. Tr. 36, 722. Mr. McWhorter, the physical therapist, told Plaintiff that he could not expect much, if any improvement, with the frequency and quantity of visits he was completing. Mr. McWhorter noted that the treatments were providing Plaintiff some pain relief of 2-3 points each time, but there was virtually no follow through with self-care techniques and so the benefit was only temporary. The ALJ noted "it became evident that the claimant was less committed to his own rehabilitation and apparently no longer desired treatment for his alleged chronic pain issues with his

1    neck and shoulder." Tr. 33, 36, 722.

2        In assessing a claimant's credibility, the ALJ may properly rely on

3    unexplained or inadequately explained failure to seek treatment or to follow a

4    prescribed course of treatment. *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir.

5    2012) (citations and quotation marks omitted). A claimant's failure to assert a

6    good reason for not seeking treatment can cast doubt on the sincerity of the

7    claimant's pain testimony. *Id.*

8        After Plaintiff's second automobile accident, Dr. James Chavez Muramatsu,

9    DO, noted that overall function and range of motion were good and the Plaintiff's

10    strength in his left arm was 5/5. Tr. 34. Treatment providers continued to report

11    only mild to moderate pain and by April 2009 Plaintiff was able to take a vacation

12    to California in an automobile. Tr. 34.

13    Having thoroughly reviewed the record, the Court finds that the ALJ supported

14    her adverse credibility findings with specific, clear and convincing findings which

15    are supported by substantial evidence.

16    **C. The Examining Psychologist's Opinion**

17        A treating physician's opinions are entitled to substantial weight in social

18    security proceedings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

19    (9th Cir. 2009). If a treating or examining physician's opinion is uncontradicted,

20    an ALJ may reject it only by offering "clear and convincing reasons that are

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

1    supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th

2    Cir. 2005).  "However, the ALJ need not accept the opinion of any physician,

3    including a treating physician, if that opinion is brief, conclusory and inadequately

4    supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation

5    omitted).  "If a treating or examining doctor's opinion is contradicted by another

6    doctor's opinion, an ALJ may only reject it by providing specific and legitimate

7    reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d

8    at 1216 (*citing Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)).

9         Plaintiff contends the ALJ did not properly reject Dr. Pollack's opinion.

10   ECF No. 16 at 16-17.   Plaintiff contends that he had more (marked) limitations

11   from a psychological standpoint than what was determined by the ALJ.  *Id*.

12        Dennis R. Pollack, Ph.D. reviewed Plaintiff's medical records, administered

13   a battery of tests and interviewed Plaintiff on a single occasion in August 2009, at

14   the request of Plaintiff's attorney.[4]  Tr. 35, 690.  The ALJ noted that Dr. Pollack

15   diagnosed Plaintiff with chronic pain disorder associated with both psychological

16

17   [4] *See Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) ("We clarify here that,

18   in the absence of other evidence to undermine the credibility of a medical report,

19   the purpose for which the report was obtained does not provide a legitimate basis

20   for rejecting it.").

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

factors and a general medical condition; anxiety disorder, not otherwise specified; and personality disorder, not otherwise specified. Tr. 35, 695. The ALJ then observed that Dr. Pollack opined that Plaintiff's only significant limitations were in his ability to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 35, 697. These opinions of Plaintiff's limitations were provided on a check-box form without further explanation. Tr. 697. An ALJ may reject a medical opinion that is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228

In giving little weight to Dr. Pollack's opinion, the ALJ noted the psychologist's opinion was based on a single visit with Plaintiff and he had no other evidence of mental health treatment or counseling, emergency room visits, or hospitalization upon which to base his opinion. Tr. 35. Plaintiff had never previously been evaluated by a psychologist or psychiatrist before seeing Dr. Pollack in August 2009 (Tr. 35, 692). The ALJ accurately observed that prior to his testimony at the hearing in this case, Plaintiff never alleged that anxiety limited his ability to work. Tr. 33. Plaintiff never alleged in his Adult Function Reports that the condition of anxiety caused him any functional limitations. Tr. 33, 197-

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

204, 234-246.  The ALJ noted that the only medical evidence that could be considered "mental health treatment" consisted of Plaintiff being prescribed Vistaril and Remeron in 2008.  Tr. 35.   "Behavioral Health Progress Notes" authored by Nurse Martin on October 15, 2008, December 12, 2008, and May 22, 2009 indicate Plaintiff generally talked about family issues and that he was working with an attorney regarding his car accident and trying to get disability.  Tr. 35, 661, 667, 681.  Nurse Martin also noted in October 2008 that Plaintiff reported that he "feels overall things are ok with the exception of some periodic anxiety issues."  Tr. 35, 661.  In his May 22, 2009 progress note, Nurse Martin noted Plaintiff's mood and affect seemed good, his sleep improved, he got a settlement from his legal case, he traveled to Southern California for a while and that he was "happy with Vistaril for sleep" (Tr. 35, 681).

Here, the ALJ also satisfied her burden when she set out a detailed and thorough summary of the facts and conflicting clinical evidence, stated her interpretation thereof, and made specific findings from Tr. 25 to 36.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Based on the above, the ALJ properly rejected the opinion of the one-time examining psychologist by specifying clear and convincing reasons that are supported by substantial evidence.

**D. RFC Hypothetical Posed to the Vocational Expert**

Plaintiff's final argument is that the ALJ's hypothetical posed to the vocational expert did not accurately reflect Plaintiff's limitations.  ECF No. 16 at 15, 17.  Because Plaintiff's argument is derivative of sections A, B, and C rejected above, the Court also finds substantial evidence supports the ALJ's assessment of Plaintiff's residual functional capacity.

The ALJ's residual functional capacity finding and vocational hypothetical question properly accounted for all of Plaintiff's physical and mental limitations that the ALJ found credible and which were supported by substantial evidence. Because the Court finds that the RFC was proper, the hypothetical posed to the vocational expert was likewise free of error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendant's Motion for Summary Judgment, ECF No. 19, is **GRANTED**.

2.  Plaintiff's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

3.  The hearing set for February 10, 2014 is **VACATED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** this file.

**DATED** June 6, 2013.



THOMAS O. RICE
United States District Judge